IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge Nina Y. Wang

Civil Action No. 22-cv-02267-NYW-STV

ERICA FISCHER,

    Plaintiff,

v.

ALLSTATE FIRE AND CASUALTY INSURANCE COMPANY,

    Defendant.

## ORDER ON MOTION TO DISMISS

This matter is before the Court on Defendant Allstate Fire and Casualty Insurance Company's Motion to Dismiss Pursuant to Rule 12(b)(6) (the "Motion" or "Motion to Dismiss") [Doc. 12, filed September 8, 2022]. This Court has reviewed the Motion, Plaintiff's Response in Opposition to Defendant's Motion to Dismiss (the "Response") [Doc. 20, filed September 29, 2022], and Defendant Allstate Fire and Casualty Insurance Company's Reply in Support of its Motion to Dismiss (the "Reply") [Doc. 21, filed October 13, 2022], as well as the applicable case law and the entire docket. For the reasons set forth herein, the Motion to Dismiss is respectfully **DENIED**.

## BACKGROUND

The following facts are drawn from the Complaint [Doc. 4] and are taken as true for purposes of this Order. On October 27, 2020, Plaintiff Erica Fischer ("Plaintiff" or "Ms. Fischer") was involved in an automobile collision and suffered severe injuries. [Doc. 4 at ¶¶ 6–7]. The collision was caused by an individual named Cesar Reza ("Mr. Reza" or the "tortfeasor"), who was insured through Defendant Allstate Fire and Casualty Insurance Company ("Defendant" or

"Allstate"). [*Id.* at ¶¶ 6, 8]. Mr. Reza's automobile insurance policy contained bodily injury coverage limits of $250,000 per person and $500,000 per accident. [*Id.* at ¶¶ 9–10]. In addition, Mr. Reza's umbrella insurance policy contained bodily injury coverage with limits of $1,000,000 per person. [*Id.* at ¶¶ 11–12].

Plaintiff's counsel sent a letter to Allstate on January 4, 2021. [*Id.* at ¶ 13]. The letter stated that Ms. Fischer was pursuing a bodily injury claim against the tortfeasor and formally requested that Allstate (1) produce the tortfeasor's insurance information, as required by Colo. Rev. Stat. § 10-3-1117, and (2) identify all insurance policies that might be relevant to Ms. Fischer's bodily injury claim. [*Id.*]. Then, on January 25, 2021, Plaintiff's counsel sent Allstate another letter, again requesting that Allstate provide insurance information pursuant to § 10-3-1117 and requesting that Allstate disclose all underlying policies of the tortfeasor. [*Id.* at ¶ 14].

Allstate responded to Plaintiff's counsel on February 1, 2021, stating that (1) Allstate received Ms. Fischer's request for information in the January 25 letter; (2) Allstate was responding to the January 25 letter; (3) the tortfeasor was insured by Allstate on the date of the collision; and (4) the applicable corresponding bodily injury coverage limits were $250,000 per person and $500,000 per accident. [*Id.* at ¶ 15]. However, Allstate did not identify the existence of Mr. Reza's umbrella policy, [*id.* at ¶ 16], and later represented in a follow-up telephone call that the automobile policy was the only policy in effect at the time of the collision. [*Id.* at ¶ 17]. Relying on Allstate's representations, Ms. Fischer submitted a $250,000 demand to Allstate on June 3, 2022. [*Id.* at ¶ 18]. On July 8, 2022, Allstate notified Plaintiff's counsel of the umbrella policy for the first time. [*Id.* at ¶ 19].

This lawsuit "arises out of Allstate's failure to comply with the provisions of" § 10-3-1117 of the Colorado Revised Statutes. [*Id.* at ¶ 5]. In relevant part, § 10-3-1117 requires all insurers

2

that provide automobile liability coverage for pending or prospective claims to "provide to the claimant or the claimant's attorney . . . within thirty calendar days after receiving a written request from the claimant or the claimant's attorney, which request is sent to the insurer's registered agent," a statement setting forth (1) the name of the insurer, (2) the name of the insured party, (3) the applicable liability limits, and (4) a copy of the policy. Colo. Rev. Stat. § 10-3-1117(2)(a). Ms. Fischer alleges that Allstate failed to comply with its obligations under this statute because it failed to disclose the existence of an umbrella policy when her counsel requested information pursuant to the statute. [Doc. 4 at ¶ 24]. According to Ms. Fischer, because Allstate accepted her written request for insurance information and provided a response to her written request, "Allstate waived service on the Allstate registered agent." [*Id.* at ¶¶ 22–25].

Ms. Fischer initiated this action against Allstate in state court on July 22, 2022, asserting one claim of withholding insurance information in violation of § 10-3-1117. [*Id.* at 4]. Allstate then removed the action to federal court, invoking this Court's diversity jurisdiction. [Doc. 1]. On September 8, 2022, Allstate filed the instant Motion to Dismiss. [Doc. 12]. Allstate argues that Plaintiff fails to state a claim upon which relief can be granted because the Complaint "makes it clear that [Plaintiff] failed to send the request for applicable policies to Allstate's registered agent, which is a requirement set forth in C.R.S. § 10-3-1117." [*Id.* at 1]. As a result, Defendant argues that Plaintiff's claim should be dismissed with prejudice under Rule 12(b)(6). [*Id.* at 7].

**LEGAL STANDARD**

Under Rule 12(b)(6), a court may dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). In deciding a motion under Rule 12(b)(6), the Court must "accept as true all well-pleaded factual allegations . . . and view these allegations in the light most favorable to the plaintiff." *Smith v. United States*, 561 F.3d 1090, 1098 (10th Cir.

3

2009). A plaintiff may not rely on mere labels or conclusions, "and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Rather, "a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); *see also Robbins v. Oklahoma*, 519 F.3d 1242, 1247 (10th Cir. 2008) (explaining that plausibility refers "to the scope of the allegations in a complaint," and that the allegations must be sufficient to nudge a plaintiff's claims "across the line from conceivable to plausible"). The Court must ultimately "determine whether the complaint sufficiently alleges facts supporting all the elements necessary to establish an entitlement to relief under the legal theory proposed." *Forest Guardians v. Forsgren*, 478 F.3d 1149, 1160 (10th Cir. 2007).

Furthermore, "[i]t is generally unacceptable for the court to look beyond the four corners of the complaint when deciding a Rule 12(b)(6) motion to dismiss." *Lassiter v. Topeka Unified Sch. Dist. No. 501*, 347 F. Supp. 2d 1033, 1040 (D. Kan. 2004). Nevertheless, courts may consider materials outside the pleading under Rule 12(b)(6) if the documents are referenced in the complaint, are central to the plaintiff's claim, and are indisputably authentic. *Gee v. Pacheco*, 627 F.3d 1178, 1186 (10th Cir. 2010); *Slater v. A.G. Edwards & Sons, Inc.*, 719 F.3d 1190, 1196 (10th Cir. 2013) (explaining that on Rule 12(b)(6) motions to dismiss, a court "may consider, in addition to the complaint, documents incorporated by reference into the complaint . . . and documents the plaintiff[] relied upon in bringing suit."). Here, the Parties' correspondence is referenced in the Complaint, *see* [Doc. 4 at ¶¶ 13–15], and is central to Plaintiff's claim; additionally, the Parties do not dispute the authenticity of the documents. Accordingly, the Court considers the Parties' correspondence [Doc. 12-1; Doc. 12-2; Doc. 20-1] in ruling on the Motion to Dismiss.

## ANALYSIS

Allstate argues that Ms. Fischer's claim must be dismissed under Rule 12(b)(6) because the Complaint does not allege that she sent her request for information to Allstate's registered agent as required by § 10-3-1117. [Doc. 12 at 4]. Specifically, it contends that the Complaint "demonstrates a clear failure to comply with the plain language of the statute," [*id.*], and maintains that it did not waive the requirement of delivery to the registered agent, either expressly or impliedly. [*Id.* at 6]. Ms. Fischer responds that her Complaint plausibly alleges that Allstate waived the requirement that the request be sent to the insurer's registered agent because she has alleged that (1) Allstate had actual notice of her request for information under § 10-3-1117 and (2) Allstate responded to her request despite the fact that it was not sent to Allstate's registered agent. [Doc. 20 at 6–7]. For the reasons that follow, the Court does not find dismissal warranted at this juncture.

**I.   Section 10-3-1117**

Section 10-3-1117 of the Colorado Revised Statutes provides that

> [e]ach insurer that provides or may provide commercial automobile or personal automobile liability insurance coverage to pay all or a portion of a pending or prospective claim shall provide to the claimant or the claimant's attorney via mail, facsimile, or electronic delivery, within thirty calendar days after receiving a written request from the claimant or the claimant's attorney, which request is sent to the insurer's registered agent, a statement setting forth the following information with regard to each known policy of insurance of the named insured, including excess or umbrella insurance, that is or may be relevant to the claim:
>
>   (I)    The name of the insurer;
>
>   (II)   The name of each insured party, as the name appears on the declarations page of the policy;
>
>   (III)  The limits of the liability coverage; and
>
>   (IV)   A copy of the policy.

Colo. Rev. Stat. § 10-3-1117(2)(a).  "An insurer that violates this section is liable to the requesting claimant for damages in an amount of one hundred dollars per day, beginning on and including the thirty-first day following the receipt of the claimant's written request."  Colo. Rev. Stat. § 10-3-1117(3).  The purpose of this statutory section is to permit "[c]laimants and injured parties [to] fully understand the total amount of insurance coverage available to them" and provide "transparency in the insurance claims process to further the public policy of encouraging settlement and preventing unnecessary litigation."  Colo. Rev. Stat. § 10-3-1101(2).

The Colorado Division of Insurance has interpreted § 10-3-1117 to require claimants who request insurance information from an insurer to send the request to the insurer's registered agent.  *See* 3 Colo. Code Regs. § 702-5:5-2-03; *see also* Colo. Dep't of Regulatory Agencies, Division of Insurance, *Revised Bulletin No. B-1.33: Process for a Claimant or a Claimant's Attorney to Request Commercial or Personal Automobile Policy Information from an Insurer*, available at https://drive.google.com/file/d/1lwB0xl3yR1Dj45hsMchkYmu2nP7U7aRd/view (last accessed May 15, 2023) ("If the Division [of Insurance] is the registered agent, the request shall be submitted by completing the online form found on the Division's automobile insurance page on its website . . . .  If the Division is not the registered agent, the claimant or the claimant's attorney shall send the request for policy information directly to the auto insurer's registered agent." (emphasis omitted)).[1]

---

[1] "Bulletins are the Division's interpretations of existing insurance law or general statements of Division policy.  Bulletins themselves establish neither binding norms nor finally determine issues or rights."  *See* 8A John W. Grund, J. Kent Miller, & David S. Werber, *Colorado Practice Series: Personal Injury Torts and Insurance*, App'x E (3d ed. Dec. 2022 update).

## II. Section 10-3-1117's Registered-Agent Requirement

### A. Statutory Interpretation

Defendant begins with an argument that the Court must construe the statute pursuant to its plain meaning, and accordingly, Plaintiff's claim fails. [Doc. 12 at 4]. Allstate is correct that when construing a statute, the Court effectuates the intent of the General Assembly; looks to the plain meaning of the statutory language and considers it within the context of the statute as a whole; and applies the statutory language if it is clear. *See Denver Post Corp. v. Ritter*, 255 P.3d 1083, 1088 (Colo. 2011). But respectfully, this Court finds that the plain language of § 10-3-1117(2)(a) is not dispositive of the issue raised in the Motion to Dismiss.

There is no dispute between the Parties that the statutory language of § 10-3-1117(2)(a) clearly contemplates that an insurer is required to provide information regarding each known policy of insurance of the named insured, within thirty calendar days after receiving a written request, <u>sent to the insurer's registered agent</u>, from the claimant or the claimant's attorney. *Compare* [Doc. 12 at 4] *with* [Doc. 20 at 6–8]. But there is nothing in the statute that addresses whether the registered-agent requirement can or cannot be waived by the insurer. *See generally* Colo. Rev. Stat. § 10-3-1117. Nor is there anything within the statute that suggests that the registered-agent requirement is jurisdictional, and thus, is not subject to other equitable doctrines—such as estoppel. *Id.* Through its independent research, the Court could locate no Colorado case law interpreting or discussing the registered-agent requirement in § 10-3-1117.

When analyzing claims arising under Colorado law, this Court "must follow the most recent decisions of the state's highest court," and if no such decisions exist, the Court "must attempt to predict what the state's highest court would do." *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 665–66 (10th Cir. 2007). In so doing, the Court "may seek guidance from decisions rendered

by lower courts in the relevant state, appellate decisions in other states with similar legal principles, district court decisions interpreting the law of the state in question, and the general weight and trend of authority in the relevant area of law." *Id.* at 666 (quotations and citations omitted); *see also Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1230 (10th Cir. 2000) ("[T]his court must follow any intermediate state court decision unless other authority convinces us that the state supreme court would decide otherwise." (quotation and alteration omitted)).  With this in mind, the Court turns to the Parties' arguments and other legal considerations relevant to the Court's analysis.

### B.  Waiver

The Parties' respective arguments focus upon waiver, i.e., whether Allstate's response to Plaintiff waived the requirement that she submit her request for information to its registered agent. *See* [Doc. 12 at 6; Doc. 20 at 6; Doc. 21 at 4].  Notably, in its Motion to Dismiss, Defendant does not argue that the registered-agent requirement under § 10-3-1117 is not waivable. *See* [Doc. 12]. Instead, it contends that Plaintiff's allegations are insufficient to plausibly allege a waiver on the part of Defendant.  [*Id.* at 6–7].  But in its Reply, Defendant argues that "Plaintiff cites to no authority stating the service requirement she must meet before seeking penalties can be waived as a matter of law," and "Allstate has not identified any authority finding the service requirement in [§ 10-3-1117] can be waived."  [Doc. 21 at 4].[2]  Similarly, this Court, through its independent research, located no Colorado case law addressing whether the statute's requirement that a request for information to an insurer be made to the insurer's registered agent may be waived, or whether

---

[2] Though this Court does not permit the assertion of new arguments in a reply brief that could have been raised in an original motion, *see White v. Chafin*, 862 F.3d 1065, 1067 (10th Cir. 2017), the Court finds it important to address this issue and will construe Defendant's argument as being made in response to the waiver argument in Plaintiff's Response. *See* [Doc. 20 at 7–9].

a claimant's strict compliance with the registered-agent clause is required to trigger an insurer's compliance obligations under § 10-3-1117.

The Court notes that generally, under Colorado law, "statutory rights may . . . be waived." *Klein v. State Farm Mut. Auto. Ins. Co.*, 948 P.2d 43, 46–47 (Colo. App. 1997), *as modified on denial of reh'g* (May 29, 1997); *see also In re Vill. Homes of Colo., Inc.*, 405 B.R. 479, 485 (Bankr. D. Colo. 2009) ("Colorado law is clear that statutory rights may be waived unless there is an express provision prohibiting waiver.") (citing *Francam Bldg. Corp. v. Fail*, 646 P.2d 345, 348 (Colo. 1982)). "Waiver is the voluntary relinquishment of a known right," *W. Cities Broad., Inc. v. Schueller*, 830 P.2d 1074, 1079 (Colo. App. 1991), *aff'd*, 849 P.2d 44 (Colo. 1993), and may be express or implied. *In re Marriage of Robbins*, 8 P.3d 625, 630 (Colo. App. 2000). An express waiver occurs "when a party states its intent to abandon an existing right," whereas a party may implicitly waive a right by "engag[ing] in conduct which manifests an intent to relinquish the right or acts inconsistently with its assertion." *Id.* "Whether a waiver of rights has occurred generally presents a question of fact," *Schuessler v. Wolter*, 310 P.3d 151, 169 (Colo. App. 2012), but the question may transform into an issue of law if "the facts are uncontested and clearly established." *Kelley v. Silver State Sav. & Loan Ass'n*, 534 P.2d 326, 328 (Colo. App. 1975).

### C. Estoppel or Substantial Compliance

Though not raised by the Parties, *see Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99 (1991) (observing that "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law"), estoppel or substantial compliance principles are also highly relevant to the Court's analysis. In *Feldewerth v. Joint School District 28-J of Counties of Adams & Arapahoe ex rel. Hartenbach*, 3 P.3d 467 (Colo. App.

9

1999), the Colorado Court of Appeals explained that "in the absence of explicit statutory language requiring it, a statute requiring the providing of *notice* by a specified means need not be strictly applied. In such a case, *the statutory requirement may be waived, or a party may be estopped from insisting upon a literal compliance with its terms*." *Feldewerth*, 3 P.3d at 471 (emphasis added). Furthermore, the court instructed that "if the *type* of notice required [by a statute] is not a jurisdictional requirement, actual notice may be substituted for it." *Id.* (emphasis in original). The *Feldewerth* court recognized, however, that "if the statute makes the type of notice described a jurisdictional prerequisite, a court must enforce the legislative intent." *Id.* at 472.

As mentioned above, § 10-3-1117 does not have the jurisdiction-limiting provisions contemplated by *Feldewerth*. "Jurisdiction is the authority of a court to hear and decide a case presented to it," *Colorow Health Care, LLC v. Fischer*, 420 P.3d 259, 263 (Colo. 2018), *as modified on denial of reh'g* (July 2, 2018), and "no statute will be held to so limit [that] power unless the limitation is explicit." *Colorado v. Borquez*, 751 P.2d 639, 642 (Colo. 1988); *see also Lewis v. Taylor*, 375 P.3d 1205, 1207 n.2 (Colo. 2016) ("[A] statute is not jurisdictional unless it contains language expressly or by necessary implication limiting a court's jurisdiction."). *Compare* Colo. Rev. Stat. § 10-3-1117 *with, e.g.*, Colo. Rev. Stat. § 24-10-109(1) (the Colorado Governmental Immunity Act ("CGIA") providing that compliance with the law's 182-day notice deadline "shall be a jurisdictional prerequisite to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action"); *see also Finnie v. Jefferson Cnty. Sch. Dist. R-1*, 79 P.3d 1253, 1256 (Colo. 2003) (noting that "section 24-10-109(1) . . . [is] a jurisdictional prerequisite to suit that therefore requires strict compliance with its terms"). The lack of jurisdiction-limiting language in § 10-3-1117 suggests that "actual notice may be substituted" for notice of the request via the insurer's registered agent. *Feldewerth*, 3 P.3d at 471.

In addition, Colorado courts considering statutory notice requirements have contemplated whether *strict* compliance with the statute is necessary, or whether *substantial* compliance is sufficient.  The Court turns first to *Blue v. Boss*, 781 P.2d 128 (Colo. App. 1989).  In this case, a plaintiff asserting a claim against a state employee sent notice of the claim to the Colorado Attorney General pursuant to the CGIA.  *Blue*, 781 P.2d at 129.  At the time, the CGIA stated that the notice would be "effective upon mailing by registered mail or upon personal service."  *Id.*; *see also* Colo. Rev. Stat. § 24-10-109(3) (1986).  The *Blue* plaintiff, however, sent the notice by regular mail, and the notice was nevertheless received by the Attorney General.  *Blue*, 781 P.2d at 129.  The Colorado Court of Appeals rejected the defendant's argument that the notice was ineffective because it was not sent by registered mail, agreeing that "the legislature did not intend that the written notice actually received by and filed with the governmental entity be insufficient because the messenger carrying the document for filing was ordinary rather than silver-winged."  *Id.* at 130.  The *Blue* court noted that the purpose of the registered-mail requirement was to "ensure that there is documentation that service had occurred," and because the parties agreed that notice was timely submitted and received, the fact that the notice was not sent by registered mail was "irrelevant."  *Id.*  The Colorado Court of Appeals reversed the dismissal of the plaintiff's complaint and remanded the case for further proceedings.  *Id.*

Next, in *People v. Mascarenas*, 666 P.2d 101 (Colo. 1983), a criminal defendant wrote to two district courts pursuant to the Uniform Mandatory Disposition of Detainers Act (the "Detainers Act") requesting a final disposition of criminal charges against him.  *Mascarenas*, 666 P.2d at 104–05.  The Detainers Act required that such a request be sent not just to the district court, but also to the prosecuting attorney and the superintendent of the institution wherein the defendant was confined.  *Id.* at 106; *see also* Colo. Rev. Stat. §§ 16-14-102, 103.  Because the defendant's

11

request was subsequently delivered to the prosecuting attorney, the court concluded that it was "apparent that the prosecutors in this case had actual notice of [the defendant's] attempt to invoke the [Detainers] Act," such that the prosecutors "[could] not now claim that they were improperly notified pursuant to the Detainers Act." *Mascarenas*, 666 P.2d at 106.  And because the defendant "ha[d] substantially complied with the provisions of the [Detainers] Act *and* the prosecution ha[d] actual notice of the prisoner's request," the Colorado Supreme Court found no abuse of discretion in the trial court's decision to dismiss the defendant's criminal charges pursuant to the Detainers Act.  *Id.*

And finally, the Court turns to *EZ Building Components Manufacturing, LLC v. Industrial Claim Appeals Office of State of Colorado*, 74 P.3d 516 (Colo. App. 2003), which appears to be the most analogous to the instant case.  In *EZ Building*, an insurer sent an employer a notice, via certified mail, that if the insurer did not receive a late payment and the next month's payment by a specified date, the insurance policy would be canceled.  *EZ Bldg.*, 74 P.3d at 517.  The notice was also sent to the employer's insurance agent via regular mail and to the Division of Workers' Compensation electronically.  *Id.*  However, Colorado law at the time required that a notice of cancellation be provided to "the division, any employer insured by the carrier . . . and any agent or representative of such employer, if applicable, by certified mail."  Colo. Rev. Stat. § 8-44-110 (2002).  The employer in *EZ Building* argued that the insurance policy cancellation was ineffective because the insurer failed to send notice via certified mail to all of the required parties.  *EZ Bldg.*, 74 P.3d at 518.  The court rejected this argument, noting that it was "undisputed that the agent and the division received actual notice of cancellation" and there was "no indication that the rights of [the] employer were affected by the method of giving notice to the agent and the division, or that the provision for certified mail is a jurisdictional requirement."  *Id.*  The court concluded that the

12

insurer's substantial compliance with the statute's notice requirements was sufficient to cancel the insurance policy.  *Id.*

### D. Predicting How the Colorado Supreme Court Would Rule

Against this backdrop, the Court predicts that the Colorado Supreme Court would rule that § 10-3-1117 does not require strict compliance with the registered-agent provision, or that the statute is otherwise subject to equitable doctrines such as waiver or estoppel.  To determine the level of compliance required by a statute, courts "must consider principles of agency and equity, as well as the intent and purposes of the statute."  *Finnie*, 79 P.3d at 1256; *see also Woodsmall v. Reg'l Transp. Dist.*, 800 P.2d 63, 67 (Colo. 1990) ("In determining whether a particular statutory requirement has been satisfied, we have imposed a degree of compliance consistent with the objective sought to be achieved by the legislation under consideration.").  The Court is not convinced that the purposes of the statute would be furthered by requiring strict compliance with the registered-agent provision.  The Colorado General Assembly enacted § 10-3-1117 to promote transparency in the claims process, to further the public policy of encouraging settlement and preventing unnecessary litigation, and to permit claimants and other injured parties to fully understand the amount of insurance coverage available to them.  Colo. Rev. Stat. § 10-3-1101(2). To permit an insurance company to provide incomplete or incorrect information in response to a procedurally improper—but otherwise clear—request under § 10-3-1117 for which the insurer had actual notice, and to then insulate the insurer from civil liability based solely on the procedural irregularity, would not promote transparency in the claims-handling process or permit claimants to fully understand the amount of available insurance coverage.  *Cf. Finnie*, 79 P.3d at 1258 ("Allowing public entities to mislead plaintiffs about how to meet the requirements of the notice

13

provision, and then to assert the affirmative defense of noncompliance, is beyond the legitimate purposes of the [C]GIA's notice provision.").

The Court thus turns to Plaintiff's allegations to determine whether she has plausibly stated an alternative basis for satisfying the statute's requirement that information requests be sent to the insurer's registered agent—and in turn, whether Plaintiff has stated a claim under § 10-3-1117.

### III. Whether Plaintiff Plausibly States a Claim Under § 10-3-1117

Ms. Fischer alleges that, on January 4 and January 25, 2021, her counsel sent letters to Allstate requesting information pursuant to § 10-3-1117. [Doc. 4 at ¶¶ 13–14]. Both letters cited § 10-3-1117 and summarized the statute's requirements, including listing the four types of information that must be provided to the claimant upon her request for information. [Doc. 12-1 at 1–2; Doc. 20-1 at 2]. The letters also reiterated the penalty provisions for failure to comply with § 10-3-1117. [Doc. 12-1 at 2; Doc. 20-1 at 2]. Ms. Fischer alleges that Allstate responded to the January 25 letter on February 1, 2021, purporting to provide all of the information required by § 10-3-1117. [Doc. 4 at ¶ 15]. Specifically, Allstate responded:

> Enclosed please find information requested pursuant to your written request dated 01/25/2021 and received in by Allstate on 01/25/2021. This includes the following information:
>
> Name of Insurer Company: Allstate Fire and Casualty Insurance Company
>
> Name of each insured party, as the name appears on the policy declarations page: MYRNA CARDONA AND CESAR A REZA
>
> Limits of the liability coverage:
>     Auto Policy 000964659309:
>     Bodily Injury Coverage – 250,000.00 per person, 500,000.00 per accident
>     Property Damage Liability Coverage – 100,000.00 per accident
>
> A copy of the policy is attached.

[Doc. 12-2 at 1].

Notably, Allstate referenced Plaintiff's "written request dated 01/25/2021," i.e., Plaintiff's "written request for information pursuant to C.R.S. § 10-3-1117." *See* [Doc. 12-1 at 1; Doc. 12-2 at 1]. Allstate then went on to list (1) the name of the insurer; (2) the name of each insured under the policy; and (3) the limits of liability coverage, and also provided a copy of the insurance policy—i.e., Allstate purported to provide each category of information required by § 10-3-1117. *Compare* [Doc. 12-2 at 1] *with* Colo. Rev. Stat. § 10-3-1117(2)(a)(I)–(IV). Ms. Fischer alleges that "Allstate waived service on the Allstate registered agent pursuant to C.R.S. § 10-3-1117 by accepting Plaintiff's written request for insurance information and providing a response to Plaintiff's request." [Doc. 4 at ¶ 25].

Taking these allegations as true, Plaintiff has plausibly alleged that Defendant had actual notice of the request made under § 10-3-1117 *and* responded to the information request pursuant to the statute, such that strict compliance with the statute's directed method of the request is not necessary, *EZ Bldg.*, 74 P.3d at 518, or that "actual notice may be substituted" for a request sent to the registered agent. *Feldewerth*, 3 P.3d at 471. Or, similarly, Plaintiff has plausibly alleged sufficient facts suggesting that Defendant "engage[d] in conduct which manifests an intent" to waive § 10-3-1117's directed method of submitting a request for information. *Marriage of Robbins*, 8 P.3d at 630.

The Court is respectfully unpersuaded by Defendant's arguments to the contrary. Allstate contends that its "February 2021 correspondence does not expressly waive the service requirements set forth in" § 10-3-1117, and "also does not implicitly waive Allstate's rights or Plaintiff's requirements under the statute." [Doc. 12 at 6]. In support, it posits that "[b]eyond the mere fact that [its] letter is in response to Plaintiff's January 25, 2021 correspondence, there is no reference to the [s]tatute and no indication that Allstate intended to waive its right to argue Plaintiff

15

failed to comply with the plain requirements in [§ 10-3-1117]." [*Id.*]. Defendant raises similar arguments in its Reply. *See* [Doc. 21 at 5 (arguing that "there is no evidence that Allstate impliedly waived its right to assert Plaintiff failed to comply with the [s]tatute, and is thereby subjecting itself to penalties" on the basis that Allstate's response letter does not reference the statute and does not state that Allstate is waiving its statutory rights) (emphasis omitted)].

Defendant's arguments go to the interpretation or weight of evidence in this case and are not appropriately asserted in a motion to dismiss. "Rule 12(b)(6) motions to dismiss are not designed to weigh evidence or consider the truth or falsity of an adequately pled complaint." *Tal v. Hogan*, 453 F.3d 1244, 1266 (10th Cir. 2006); *see also Rustgi v. Reams*, 536 F. Supp. 3d 802, 818–19 (D. Colo. 2021) (declining to "make inferences and draw conclusions beyond the [complaint]" at the motion-to-dismiss stage). Allstate's subjective interpretation of the evidence does not entitle it to dismissal of Ms. Fischer's claim; indeed, the Court is required to take the well-pleaded allegations as true and view them in the light most favorable to Plaintiff. *Brokers' Choice of Am., Inc. v. NBC Universal, Inc.*, 757 F.3d 1125, 1136 (10th Cir. 2014). Both Parties will have an opportunity to address the evidence, and applicable legal theories, through dispositive motions or at trial. But for the reasons set forth in this Order, dismissal of Plaintiff's claim is not appropriate at this juncture. The Motion to Dismiss is thus respectfully **DENIED**.

## CONCLUSION

For the reasons stated herein, it is hereby **ORDERED** that:

(1)   Defendant Allstate Fire & Casualty Insurance Company's Motion to Dismiss Pursuant to Rule 12(b)(6) [Doc. 12] is **DENIED**; and

(2) Within **seven days** of the date of this Order, the Parties shall jointly contact the chambers of the Honorable Scott T. Varholak to set a Scheduling Conference in this case.[3]

DATED: May 15, 2023

BY THE COURT:

Nina Y. Wang
United States District Judge

---

[3] The operative material facts do not appear to be in dispute: (1) by letters dated January 4 and January 25, 2021, Ms. Fischer's attorney requested information regarding Mr. Reza's insurance policies and specifically referred to § 10-3-1117(2)(a), [Doc. 12-1 at 1; Doc. 20-1 at 2]; (2) the letters were not sent to Allstate's registered agent, but to the Claims Department, [Doc. 12-1 at 1; Doc. 20-1 at 1]; (3) Allstate responded to Ms. Fischer's attorney, referring to the written request dated January 25, 2021, and providing information regarding Mr. Reza's insurance coverage as required by § 10-3-1117, [Doc. 12-2]; and (4) the information provided by Allstate failed to include information regarding Mr. Reza's umbrella policy. [*Id.*]. Thus, it is unclear what, if any, discovery is necessary in this action. This Court directs the Parties to address this issue, and whether an expedited discovery schedule is appropriate in this action, with Judge Varholak.